UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Daneen M. Darling,

    Plaintiff,

    v.                                                                                    Civil Action No. 2:10-CV-327

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## **REPORT AND RECOMMENDATION**
(Docs. 18, 24)

Plaintiff Daneen Darling brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. Pending before the Court are Darling's Motion for Order Reversing the Commissioner's Decision (Doc. 18), and the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Doc. 24). For the reasons stated below, I recommend that Darling's Motion be DENIED; and the Commissioner's Motion be GRANTED.

## **Background**

Darling was forty-one years old on the alleged disability onset date of January 1, 2006. (AR 132.) She completed ninth grade and attended a tutorial center in an effort to achieve a high school diploma. (*Id.* at 28.) In August 2005, Darling began

working for National Hanger as a production and assembly worker.  (*Id.* at 144.)  In February 2008, she stopped working, citing multiple reasons, including back pain.  (*Id.* at 29, 144, 240.)  Darling stated that she has "pain from [her] back going down [her] legs and . . . in [her] neck," and that she takes medication, such as Vicodin, diclofenac, and ibuprofen to abate her ailments.  (*Id.* at 31, 163.)

In September 2007, Darling filed an application for supplemental security income.  (AR 123.)  In support of this application, Darling alleged back pain, depression, and anxiety.  (*Id.* at 159.)  Although Darling admitted to suffering from back pain before her alleged onset date, she speculated that these pains were exacerbated by the nature of her work at National Hanger.  (*See id.* at 29.)  Darling's application was denied initially and on reconsideration.  (*Id.* at 53-54.)

On June 4, 2010, Administrative Law Judge ("ALJ") Thomas Merrill conducted a hearing on Darling's application.  (AR 26.)  At the hearing, Darling was represented by counsel and testified on her own behalf.  (*Id.* at 26-27.)  On July 30, 2010, the ALJ issued a decision finding Darling not disabled under the Social Security Act.  (*Id.* at 18.)  Thereafter, the Decision Review Board selected the ALJ's determination for review, but did not do so during the time allowed.  (*Id.* at 1.)  As a result, the ALJ's decision became final.  (*Id.*)  Having exhausted her administrative remedies, Darling commenced this action on December 29, 2010.  (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step

2

requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step commands that the ALJ determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, the ALJ first determined that Darling had not engaged in SGA since September 17, 2007, her application date. (AR 13.) Next, the ALJ found that Darling had the severe impairment of degenerative disc disease of the

3

cervical and lumbar spine. (*Id.* at 13.) The ALJ, however, concluded that Darling's carpal tunnel syndrome, asthma, depression, and anxiety were not severe impairments. (*Id.* at 13-14.) Proceeding to step three, the ALJ found that Darling did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 15.) The ALJ then determined that Darling had the RFC to perform "light work as defined in 20 CFR 416.967(b) except she can occasionally climb ladders, stoop, crawl, and crouch. She can frequently climb stairs, balance, and kneel." (*Id.*) Relying on this assessment, the ALJ found that Darling was capable of performing her past relevant work as either a machine operator or a fast food worker. (*Id.* at 18.) Thus, the ALJ concluded that Darling had not been under a disability since the alleged onset date of January 1, 2006. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial

evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is restricted to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role in reviewing the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded [that] decision," *Hernandez v. Barnhart*, No. 05-9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (internal quotation marks omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I.    Listed Impairment

Darling claims that the ALJ erred as a matter of law when he found that her impairment did not equal an impairment identified in the Listings.  (Doc. 18-1 at 10.)

Darling contends that the ALJ failed to consider whether the severity of her back and neck pain equaled one of the medical conditions contained in the Listings. (*Id.* at 11.) This claim lacks merit.

As previously discussed, the ALJ "considers *medical* evidence" at the third step of the sequential analysis "to determine if the impairment meets or equals the criteria of an impairment" from the Listings. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (emphasis added). For a claimant to successfully carry her burden of proof at this step, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

In his decision, the ALJ found that a combination of Darling's impairments did not meet or medically equal Listing 1.04 "because there is no medical evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (*See* AR 15.) Despite this conclusion, however, the ALJ neglected to provide analysis to support his determination as to medical equivalency. (*See id.*) Rather, the ALJ only provided the reasoning behind his decision as to whether Darling's pain met a listed impairment. (*See id.*) Nevertheless, this failure is not necessarily fatal, as courts "generally recognize[] the applicability of [the principle of harmless error] in the administrative review setting," including social security disability cases. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). "For example, . . . [if] certain technical errors [are] minor enough not to undermine confidence in the determination of th[e] case," then "an ALJ's conduct, although improper, d[oes] not require reversal because the procedural impropriety involved [did] not alter[] the evidence before the ALJ." *Id.*

6

(citations and internal quotation marks omitted).  In such a case, it is "appropriate to supply a missing dispositive finding under the rubric of harmless error . . . where, based on material the ALJ did at least consider (just not properly), [a court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Id.*

Listing 1.04, which pertains to disorders of the spine or the spinal cord, includes three separate impairments: nerve root compression; spinal arachnoiditis, and lumbar spinal stenosis resulting in pseudoclaudication.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.  For a claimant to establish equivalency in severity to one of these impairments, she must either show (1) "motor loss . . . accompanied by sensory or reflex loss," *id.* at § 1.04A; (2) "severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours," *id.* at § 1.04B; or (3) the "chronic nonradicular pain and weakness . . . resulting in inability to ambulate effectively," *id.* at § 1.04C.

Darling maintains that the objective medical evidence, combined with her subjective claims of severity, satisfy this burden to establish equivalency.  (*See* Doc. 18-1 at 11.)  Specifically, she cites various X-rays, which revealed spondylosis, mild scoliosis of the thoracic and lumbar spine, intervertebral disc narrowing at C5-6 and C6-7 with mild anterior and minimal posterior vertebral body ridging and mild uncinate spurring, and low cervical disk degenerative changes with spurring and left C6-7 forminal suspected stenosis.  (AR 542.)  Darling also relies upon an MRI which revealed diffuse disc desiccation, a mild disc bulge, and a small central disk protrusion.  (AR 536.)  This

7

objective medical evidence, however, does not establish equivalence to any of the aforementioned severities. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Furthermore, Darling's subjective accounts of severity were found not credible by the ALJ and regardless, are legally inadequate to demonstrate equivalence to a listed impairment. *See* SSR 86-8, 1986 WL 68636, at *4 (1986), *superseded on other grounds*, SSR 91-7c, 1991 WL 231791 (Aug. 1, 1991) ("Any decision as to whether an individual's impairment or impairments are medically the equivalent of a listed impairment must be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary.").

The ALJ considered the objective medical evidence and accurately stated that Darling displayed full strength in all extremities, full range of motion in the neck, and normal strength, sensation, and range of motion of the spine. (AR 17, 287, 302.) Darling had full cervical range of motion with some discomfort on maximum flexion and leftward rotation. (*Id.* at 386.) She also had full lumbar range of motion with discomfort at the extremes of flexion-extension. (*Id.*) The ALJ noted that Darling had negative straight and cross leg raise testing. (*Id.* at 17, 302, 513, 604.) She had full free straight leg raise without radicular pain, no pain with hip range of motion, and intact strength, knee jerk and ankle jerk reflexes, and sensation. (*Id.* at 389.) In addition, Darling exhibited normal gait and the ability to heel and toe walk despite her claim of recent back pain. (*Id.* at 17, 389.) She had full range of motion of the upper extremities with no

impingement, sensory loss, or motor function loss.  (*Id.* at 512-13.)  Images of Darling's spine "revealed only mild disc bulge and small central disk protrusion at L5-S1, and low cervical degenerative changes with spurring [at] left C6-7."  (*Id.* at 17, 275, 493.)  Multiple doctors observed that she was neurologically intact.  (*Id.* at 358, 513.)  Finally, Darling was able to walk without a limp and climb onto an examination table without difficulty.  (*Id.* at 386, 389.)

In light of this evidence, it cannot be said that Darling suffered from motor loss, needed to frequently change posture, or was unable to ambulate effectively.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.  Thus, any error in the ALJ's failure to discuss his reasoning is harmless because his finding as to medical equivalency is supported by substantial evidence.  *See Miller v. Astrue*, No. 2:10-cv-123, 2011 WL 6102054, at *9 (D. Vt. Dec. 8, 2011) ("While that was not done here, it did not amount to an error worthy of remand, since even application of the correct legal principles to the record could lead to only one conclusion." (Internal quotation marks omitted)); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (providing that "the absence of an express rationale" at step three is not a ground for remand, so long as "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.").

## II.     ALJ's Hypothetical Question to the Vocational Expert

Darling maintains that the ALJ erred when he presented the vocational expert with an inadequate hypothetical question at step five of the sequential analysis. (Doc. 18-1 at 13.) As the ALJ's hypothetical question reflected his RFC determination, the argument is that the RFC determination was not supported by substantial evidence and was contrary to law. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007).

### A.     Mental Impairments

Darling claims that the ALJ erred when he failed to include her alleged psychological impairments, which he had previously determined to be non-severe, in his hypothetical question to the vocational expert. (Doc. 18-1, at 13.) This claim lacks merit.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). When a claimant has multiple impairments, the regulations require the ALJ to "consider all of [the claimant's] medically determinable impairments of which [he is] aware, *including* [a claimant's] medically determinable *impairments that are not 'severe'* . . . ." *Id.* at § 404.1545(a)(2) (emphasis added).

Despite Darling's claim to the contrary, the ALJ clearly considered her alleged mental impairments when making the RFC determination. (*See* AR 17.) Specifically, the ALJ found Darling's "mental limitations to be nonsevere" and noted that she "presented [herself] as organized at the hearing, and was able to offer articulate testimony regarding her limitations. Further, [she] participated in limited counseling for these conditions, and

reported the ability to go to the grocery store, attend classes at vocational rehabilitation, and also work part-time." (*Id.*)

The ALJ discussed the relevant medical evidence relating to Darling's mental impairment earlier in his decision, weighing the medical opinions of Drs. Katherine Baum, Steve B. Mann, and J. Coyle. (*See* AR 14.) The ALJ considered the opinion of Dr. Coyle, a State agency medical consultant (*see id.* at 14), who stated that Darling's "[l]imitations overall are less than mild" (*id.* at 334). The ALJ also discussed the opinions of two psychologists, Drs. Baum and Mann, each of who examined Darling once. Dr. Baum concluded that Darling "will have difficultly working in an environment that requires strong academic skills, rapid processing speed, good decision-making and executive functioning skills, adequate attentional and memory skills and strong interpersonal skills." (*Id.* at 452.) Dr. Mann observed that "[p]rominent in [Darling's] presentation is the presence of very high levels of self perceived disability, high levels of anxiety and elevated levels of depression." (*Id.* at 583.) The ALJ explained that Drs. Baum and Mann's opinions had less weight because they lacked the ability to review the record evidence, and only examined Darling once. (*Id.* at 14.) In contrast, the ALJ reasoned that Dr. Coyle's opinion was entitled to greater weight because it was consistent with Darling's "activities of daily living." (*Id.* at 14, 28, 31-32, 139-40, 386, 595.) As Darling's ability to attend class, shop for groceries, attend her daughter's athletic events, participate in Neighborhood Watch, and work at the Goodwill is consistent with the opinion of Dr. Coyle, the RFC determination is supported by substantial evidence. *See Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency

11

physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." (Internal quotation marks omitted)). The ALJ's decision to not include additional non-exertional limitations in his hypothetical question to the vocational expert, therefore, was not in error.

Darling also argues that the ALJ erred when he failed to consider the evaluation of Dr. Kirke McVay of the Vermont Disability Determination Service. (Doc. 18-1 at 13.) "The Commissioner is in fact required to consider all of the relevant evidence received in making a disability determination. . . . The ALJ is obliged to consider and give reasons for rejecting the reports of 'other sources,' regardless of whether they are medical professionals." *Miller*, 2011 WL 6102054, at *8 (citations omitted). Dr. McVay performed a consultative psychological examination on Darling, and opined that her memory and concentration were severely impaired, daily activities and levels of interest were moderately impaired, and ability to relate to people was severe to markedly impaired. (AR 320.) The ALJ, however, failed to reference Dr. McVay's opinion in his decision. (*See id.* at 14.) Nevertheless, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). As previously discussed, Darling's activities are not consistent with a finding of a disabling mental impairment. (*See* AR 17.) A remand, therefore, is not necessary despite the ALJ's failure to specifically discuss Dr. McVay's report because it would not have altered the RFC determination.

### B. Non-Examining Physician

Darling also claims that the ALJ's decision to afford great weight to the opinion of Dr. Cynthia Short, a state agency medical consultant, was not supported by substantial evidence. Specifically, Darling argues that there is "simply no substantial evidence to support [Dr. Short's] conclusion," and it "is not consistent with [Darling's] testimony about the intensity and persistence of her pain or its limiting effects." (Doc. 18-1 at 13.) This claim lacks merit.

At step four of the sequential analysis, the ALJ found that "[t]he opinions of Dr. Short are given great weight, as they are consistent with the medical evidence on record." (AR 17.) In her physical RFC assessment, Dr. Short opined that Darling could either sit or "stand and/or walk" for approximately six hours in an eight-hour workday. (*Id.* at 305.) Dr. Short also purported that Darling could frequently "lift and/or carry" ten pounds and could occasionally "life and/or carry" twenty pounds. (*Id.*)

Certainly, "[t]he general rule is that reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) (internal quotation marks omitted); *see Green-Younger v. Barnhart*, 335 F.3d 99, 107-08 (2d Cir. 2003) (recognizing expert opinion evidence as not sufficiently substantial to undermine the position of the treating physician where the expert was a consulting physician who did not examine the claimant). Nevertheless, in many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of an ALJ's RFC determination. *See Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010)

(finding no error in ALJ's reliance upon state agency consultant's opinion). This undoubtedly holds true when, as in this case, a consultant's report is for the most part consistent with the other medical evidence. *See Babcock*, 412 F. Supp. 2d at 280.

In formulating her opinion, Dr. Short explained that Darling's reflexes were intact, that she could walk without a limp, heel walk without difficulty, and touch her toes. (AR 305.) In addition, Dr. Short discussed Darling's x-rays, which she opined revealed "excellent alignment" with "no instability." (*Id.*) Dr. Short noted Darling's "well aligned vertebrae with mild narrowing at L5-S1," as well as her "significant C6-7 narrowing with neuroforaminal spurs." (*Id.*) Dr. Short noted only "mild scoliosis" and further found that Darling's lumbar, thoracic and cervical range of motion, strength and sensation was normal. This accurate summary of the objective medical evidence is consistent with Dr. Short's opinions as to limitation. (*See id.* at 275, 493.) The only contradicting evidence that Darling presents are her own accounts, which, as discussed *infra*, were found to be not credible. The ALJ's decision to afford Dr. Short's opinion "great weight," therefore, was not in error.

## III. ALJ's Credibility Determination

Next, Darling claims that the ALJ's finding as to her credibility is not supported by substantial evidence. (Doc. 18-1 at 12-13.) Specifically, Darling argues that the ALJ deliberately ignored objective medical evidence that supported her accounts and that "[t]he absence of some clinical signs and symptoms does not support a conclusion that [her] pain is not disabling." (*Id.* at 12.) This claim lacks merit.

The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a); *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d. Cir. 1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe . . . as to preclude any substantial gainful employment."). If the claimant does suffer from such an impairment, the ALJ must consider at the second step "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. 20 C.F.R. § 404.1529(a). The ALJ must consider "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in . . . administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529(a).

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain. *Id.* (citing

15

*McLaughlin v. Sec'y of HEW*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5-6.

Using this methodology, the ALJ first found that Darling's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 16.) Nevertheless, the ALJ determined that Darling's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent [that] they [were] inconsistent with the . . . residual functional capacity assessment." (*Id.*) The ALJ reasoned that Darling's daily activities and the objective medical evidence were not consistent with her reported limitations. The question is whether this finding is supported by substantial evidence.

In his decision, the ALJ spent considerable time discussing Darling's claims as to her abilities and limitations. The ALJ accurately summarized Darling's testimony that her daughter assists her in performing many daily activities, including dressing, preparing food, cleaning, and shopping. (AR 16, 30-35, 137-38.) Darling maintained that she could not bend without experiencing pain, could not lift a gallon of milk, could not mop for more than five consecutive minutes, could not sleep through the night, and could not remain at the tutorial center for longer than two hours at a time. (*Id.* at 16, 33, 35, 37, 39, 137, 168.) Darling described her routine as "basically just more or less lay[ing] on the

couch . . ." when her daughter is at school. (*Id.* at 31, 16.) Furthermore, Darling stated that she did not feel comfortable around large groups of people. (*Id.* at 16, 37-38, 142.)

The ALJ first compared these accounts to the objective medical evidence on the record. As previously discussed in Section I, the ALJ accurately summarized objective medical evidence, including Darling's "negative straight and cross leg raise testing," "normal gait," as well as her "full strength in all extremities, full range of motion in the neck, negative Spurling's maneuver, and only mild tenderness of the lumbar spine." (AR 17.) The ALJ noted that images of Darling's spine revealed only a minor disc bulge and small central disc protrusion at L5-S1 and low cervical degenerative changes with spurring at C6-7. (AR 17, 272-292, 453-511.) The ALJ then considered Darling's daily activities, specifically noting her ability to walk for an hour to the grocery store, attend classes, and work at the Goodwill. (*Id.* at 17, 28, 31-32, 139-40, 386.) In addition, Darling was learning how to drive an automobile, could attend her daughter's athletic events, and could participate in Neighborhood Watch. (*Id.* at 594-95.) The ALJ also discussed Darling's capacity for housework such as mopping, so long as she was able to take breaks. (*Id.* at 17, 35, 138.) The record shows that Darling could partially prepare meals,[1] wash clothes and dust furniture, albeit slowly, and sit in a car for an hour to travel to her hearing. (*Id.* at 17, 30, 35-36, 137-38, 180.) A social worker observed Darling's ability to "s[i]t for one and a half hours at her kitchen" during their appointment and

---

[1] Darling argues that the evidence does not support a conclusion that she could make complete meals for herself. (Doc. 18-1, at 13.) The record is unclear as to whether Darling could prepare complete meals without some assistance from her daughter. (*See* AR 35-36, 137-38.) Regardless, the ability to partially prepare meals is evidence of some functionality, and certainly the ALJ was entitled to consider this evidence.

noted that she did not display "any sign of discomfort." (*Id.* at 249.) These activities, in combination with the objective medical evidence, could lead a reasonable mind to conclude that Darling's alleged symptoms were inconsistent with the record evidence.

In addition, other evidence in the record raised concern regarding Darling's credibility. For instance, a social worker noted that Darling had left her previous jobs due to interpersonal problems, and displayed no interest in furthering her education or training because she believed she should be eligible for disability benefits. (*See* AR 246-47.) That same counselor later noted that her office did not support Darling's claim for disability because she could work. (*Id.* at 261.) Similarly, Dr. Mann observed that "Darling [was] oriented towards social security disability not rehabilitation." (*Id.* at 583.) This evidence further supports the ALJ's determination that Darling lacked credibility regarding the severity of her impairments. *See Simpson v. Astrue*, No. 5:10-cv-72, 2011 WL 2458105, at *8 (D. Vt. Jun. 16, 2011) (indicating that it is proper for the ALJ to consider a plaintiff's lack of motivation to work when making a credibility determination). Thus, the ALJ did not err in making his credibility determination at step four of the sequential analysis.

## Conclusion

For the reasons stated above, I recommend that Darling's Motion for an order reversing the decision and remanding for further proceedings (Doc. 18) be DENIED; and the Commissioner's Motion for an order affirming such decision (Doc. 24) be GRANTED.

Dated at Burlington, in the District of Vermont, this 6th day of February, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).